**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIERPOINT, LLC,** | : | |
| **Plaintiff** | : | **No. 1:18-cv-02104** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **GIBRALTAR, LLC,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court in the above-captioned action is Plaintiff Tierpoint, LLC ("Plaintiff")'s

second motion for the entry of a default judgment against Defendant Gibraltar, LLC

("Defendant"). (Doc. No. 11.) Consistent with Defendant's failure to appear or defend in this

action, no opposition to the motion has been filed. For the reasons that follow, the Court will

grant the motion and defer the entry of judgment against Defendant pending receipt of additional

documentation from Plaintiff as to the appropriate amount of damages.

## I.     BACKGROUND

Plaintiff "provides information technology services including . . . network security, cloud

computing, and wireless data backup." (Id. ¶ 13.) Defendant "is a national full-services

information technology provider focusing on managed services, laserfiche enterprise content

management, hosting, backup and disaster recovery services, and HIPPA risk assessments." (Id.

¶ 12.) In October of 2015, Plaintiff "entered into a Membership Interest Purchase Agreement

with Windstream Services LLC whereby [Plaintiff] acquired Windstream Services LLC's

membership interests" in a company known as Hosted. (Id. ¶ 14.) Accordingly, Plaintiff

"assumed all of Hosted's contractual rights and liabilities, including Hosted's agreements with

[Defendant]." (Id. ¶ 15.) In December of 2015, "Hosted changed its name from Windstream

Hosted Solutions, LLC to TierPoint Hosted Solutions, LLC[,]" which "is a wholly owned subsidiary of [Plaintiff]." (Id. ¶ 16) (internal quotation marks omitted).

Starting in 2015, Defendant placed multiple Sales Orders with Plaintiff, and these orders "specifically outline the services" needed by Defendant, as well as "the amounts due to [Plaintiff]." (Id. ¶¶ 19-20.) Under this arrangement, Defendant placed orders with Plaintiff, who provided Defendant "with various IT management services." (Id. ¶ 21.) Each of the Sales Orders is "subject to and controlled by the Windstream Services Terms and Conditions" (the "Terms and Conditions"), and according to Plaintiff, "[t]he Sales Orders coupled with the Terms and Conditions constitute agreements between" Plaintiff and Defendant. (Id. ¶¶ 23, 25.) While Defendant initially made timely payments to Plaintiff, Defendant "became delinquent in payments beginning [in] 2016." (Id. ¶¶ 26-27.) Paragraph 5 of the Terms and Conditions provides that, as to late or delinquent payments, Plaintiff is authorized to add a late fee to the given amount owed. (Id. ¶¶ 28-29.) Following Defendant's failure to make payments on the invoices, the parties "devised a repayment plan[,]" under which Defendant "agreed to pay $7,000 per week beginning in September 2016 until [Defendant] repaid all of its outstanding balance to [Plaintiff]." (Id. ¶¶ 30-31.) Defendant made such payments until December 12, 2017, but did not make further payments after this date. (Id. ¶¶ 32-33.) Paragraph 14 of the Terms and Conditions provides, inter alia, that either party may terminate the Agreement "if the other party is in breach of any material provisions . . . and such other party fails to cure within thirty (30) days after written notice." (Id. ¶ 35) (citing Doc. No.1-4 ¶ 14). Additionally, Paragraph 14 authorizes Plaintiff to "limit, interrupt, suspend or terminate services immediately if: (a) after any required notice, [Defendant] has not paid for services, or has failed to pay a deposit or advance payment requested by [Plaintiff]." (Id.) (citing Doc. No. 1-4 ¶ 14).

On January 24, 2018, in accordance with Paragraph 14, Plaintiff informed Defendant by letter "that it was delinquent in payment for the services provided by [Plaintiff]." (Id. ¶ 36.) In this letter, Plaintiff "notified [Defendant] that its current balance due . . . was $374,997.90, of which $339,525.26 was past due" and "requested payment in full of the past due amount within ten days of the date of the letter." (Id. ¶¶ 38-39.) Additionally, Plaintiff informed Defendant "that if payment was not received," it "would suspend its services and potentially pursue legal remedies." (Id. ¶ 40.) Defendant did not make these payments, and, subsequently Plaintiff "suspended its services on May 1, 2018" in accordance with Paragraph 14 of the Terms and Conditions. (Id. ¶¶ 41-42.)

In addition, Paragraph 15 of the Terms and Conditions provides that as a consequence of Plaintiff's termination due to Defendant's breach, Defendant "shall pay . . . as liquid damages . . . an amount equal to one hundred percent (100%) of the [monthly recurring charges] applicable to the terminated services multiplied by the number of months remaining in the then-current term or renewal term." (Id. ¶ 45) (alteration in original) (quoting Doc. No. 1-4 ¶ 15). According to Plaintiff, by operation of Paragraph 15, Defendant "is also liable to [it] for the termination of the Sales Orders prior to expiration of the term[,]" specifically for an amount "no less than $137,966.76 in early termination fees." (Id. ¶¶ 43, 46.)

On June 6, 2018, Plaintiff "made one final attempt to obtain payment for the services provided" by it to Defendant through a letter that "demanded payment in full from [Defendant] for all fees and charges for any services provided." (Id. ¶¶ 47-49.) According to Plaintiff, "[b]y June 2018, the total unpaid balance . . . was $567,373.86, exclusive of applicable interest[,]" and Defendant "has not made any [] further payments to [Plaintiff]." (Id. ¶¶ 50-51.)

Plaintiff initiated the above-captioned action on October 30, 2018 by filing a complaint in this Court against Defendant asserting one count of breach of contract as a result of Defendant's purported "failure to pay for IT services provided by TierPoint." (Id. ¶ 1.)[1] As stated by Plaintiff in the complaint, "[t]he Sales Orders and Terms and Conditions are valid and legally enforceable agreements"; Plaintiff "performed all of its obligations under the Sales Orders and Terms and Conditions"; and Defendant "materially breached the Sales Orders and Terms and Conditions" by "fail[ing] to make timely payments for the services [Plaintiff] provided." (Id. ¶¶ 53-55.) In addition, Plaintiff states that Defendant's failure to make these payments constitutes a violation of the relevant portions of the Sales Orders and Terms and Conditions, and that, as a result of Defendant's breach, Plaintiff "has suffered damages in excess of $567,373.86." (Id. ¶¶ 56-57.) In its motion for default judgment, Plaintiff asserts that "the total amount due to [it] by [Defendant] . . . [is] $567,373.86, together with additional interest accruing at 6% per annum, plus costs of suit." (Doc. No. 11 at 4.)

Following Plaintiff's filing of its complaint on October 30, 2018, a summons was issued as to Defendant on the same date. (Doc. No. 3.) On November 27, 2018, the summons was returned executed, noting that Defendant was served on November 14, 2018 and establishing a deadline for Defendant to answer or otherwise respond to Plaintiff's complaint by December 5, 2018. (Doc. No. 4.) Defendant, however, has not appeared, answered, moved, or otherwise responded to Plaintiff's complaint. Consequently, Plaintiff filed a request with the Clerk to enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) on January 23, 2019

---

[1] While Plaintiffs do not explicitly note the state law that governs their breach of contract claim, the Court presumes that Plaintiffs have asserted this claim under Pennsylvania law. See, e.g., Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992) ("Federal courts sitting in diversity must apply the substantive law of the state whose laws govern the action." (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938))).

(Doc. No. 6), and the Clerk entered default on the same date (Doc. No. 8). On January 25, 2019, Plaintiff filed a motion for the entry of default judgment against Defendant by the Clerk pursuant to Federal Rule of Civil Procedure 55(b)(1) (Doc. No. 9), which the Court denied in an Order dated April 17, 2019 (Doc. No. 10). Specifically, in light of the manner in which Plaintiff styled this filing, the Court construed the motion as one filed pursuant to Rule 55(b)(2) and denied the motion without prejudice for failure to file a supporting brief under the applicable Local Rule. (Id.) Plaintiff then filed the instant motion for the entry of default judgment against Defendant pursuant to Rule 55(b)(2) on May 1, 2019 (Doc. No. 11), along with a brief in support thereof (Doc. No. 12). Because the period for filing a brief in opposition to the motion has expired and Defendant has not filed any such opposition, the Court deems Plaintiff's motion to be unopposed.[2] Accordingly, the motion is ripe for disposition.

## II. LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Indeed,

---

[2] See L.R. 7.6 (articulating fourteen-day period for filing a brief in opposition to a motion and providing that "[a]ny party who fails to comply with this rule shall be deemed not to oppose" the motion).

it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court. <u>See</u> <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." <u>See</u> <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 164 (3d Cir. 2000) (citing <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 195 (3d Cir. 1984)). "A finding that default judgment is appropriate, however, is not the end of the inquiry." <u>Martin v. Nat'l Check Recovery Servs., LLC</u>, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." <u>See</u> Wright, <u>et al.</u>, <u>supra</u>, at § 2688; <u>Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.</u>, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) ("Consequently, before granting a default judgment, the Court must . . . ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." (citations omitted)). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof." <u>See</u> <u>E. Elec. Corp. of N.J. v. Shoemaker Const. Co.</u>, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. <u>See</u> <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III.    DISCUSSION

Having reviewed the record, including Plaintiff's complaint, motion, supporting brief, exhibits, and accompanying affidavits, the Court concludes that Plaintiff's motion should be granted, but the Court presently cannot ascertain the appropriate amount of damages and, accordingly, will defer the entry of judgment until a proper damages calculation has been made. As an initial matter, the Court observes that Plaintiff's unchallenged allegations in the complaint, taken as true, state a legitimate cause of action for breach of contract under Pennsylvania law because Plaintiff has shown "(1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages caused by the breach." See Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co., 120 F. Supp. 3d 449, 457-58 (W.D. Pa. 2015) (citing Haywood v. Univ. of Pittsburgh, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013)). In addition, having considered the relevant factors in examining Plaintiff's motion, the Court finds that granting Plaintiff's motion is warranted because: (1) Plaintiff has demonstrated prejudice due to Defendant's lack of participation in this case, as Plaintiff's efforts to collect on the money allegedly owed to it have been impeded; (2) there is no showing of any meritorious defense on the part of Defendant; and (3) taking Plaintiff's allegations as true, the Court finds culpable conduct on the part of Defendant, as Defendant reportedly neglected to make necessary payments to Plaintiff. See Chamberlain, 210 F.3d at 164 ("Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984))). Accordingly, the Court will grant Plaintiff's motion for default judgment against Defendant.

While the Court finds it proper to grant Plaintiff's motion, the Court will, however, defer the entry of judgment pending receipt of additional documentation as to the appropriate amount of damages from Plaintiff.  At this juncture, Plaintiff has not offered sufficient support for its claim of a sum certain of "$567,373.86, together with additional interest accruing at 6% per annum, plus costs of suit."  (Doc. No. 11 at 4.)  In support of its motion, Plaintiff refers to the sworn affidavit of Stacie Robinson, Vice President of Revenue Operations and Analysis for Plaintiff, which states that "as of the date of the execution of [the] affidavit," Defendant "remains indebted to [Plaintiff] . . . in the amount of $567,373.86, together with additional interest accruing at 6% per annum, plus costs of suit."  (Doc. No. 12-3 at 3.)  Upon review of the relevant documentation to which Robinson refers, including the copies of the Sales Orders that were submitted in conjunction with Plaintiff's complaint (Doc. No. 1-3), the Court is unpersuaded that these documents show that a "sum certain" of at least $567,373.86 is warranted.  The compilation of Sales Orders submitted by Plaintiff along with its complaint consists of scattered copies of orders in varying amounts, with no discernible tabulation or calculation that would demonstrate how Plaintiffs have arrived at the purported amount of damages.  (Doc. No. 1-3.)  Moreover, Plaintiff does not provide any basis in its motion or accompanying brief for its assertion that it is entitled to "additional interest accruing at 6% per annum."  In this instance, especially in light of the fact that Plaintiff demands a significant dollar amount in damages, the Court finds it appropriate to grant Plaintiff's motion but defer the entry of judgment until it an appropriate damages calculation is made.  See Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc., 270 F.R.D. 161, 165 (D. Del. 2010) (granting motion for default judgment but deferring decision on damages in light of "several factors [that] counsel in favor of reserving decision on the amount of damages" where the Court was unable to "determine the amount of

damages with certainty based on [the plaintiff's] submissions"); see also Bridges Fin. Grp., Inc. v. Beech Hill Co., Inc., No. 09-cv-2686, 2011 WL 1485435, at *5 (D.N.J. Apr. 18, 2011) (granting motion for default judgment but deferring judgment on damages pending supplemental filings from the plaintiff as to requested amounts where the plaintiff did "not specify how interest was calculated or the provision in the loan agreement that authorizes attorneys' fees"). Accordingly, the Court will direct Plaintiff to supplement its request for damages in a manner that will permit the Court to make an adequate determination as to damages in this case.

**IV.    CONCLUSION**

Based on the foregoing, the Court will grant Plaintiff's motion for default judgment and defer the entry of judgment pending additional documentation as to the appropriate amount of damages consistent with the Court's discussion herein.  (Doc. No. 11.)  An appropriate Order follows.